Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/27/2020 09:07 AM CDT

Adair Holdings, LLC, appellant, v.
Dennis G. Johnson et al., appellees.

___ N.W.2d ___

Filed January 3, 2020.    No. S-18-1214.

1.  **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.
2.  **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court.
3.  **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
4.  ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
5.  **Equity: Quiet Title.** A quiet title action sounds in equity.
6.  **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
7.  **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

8. **Title: Deeds: Tax Sale.** Actions challenging title obtained via a tax deed are governed by statute.

9. **Title: Deeds: Tax Sale: Quiet Title.** Because a void tax deed grants color of title in a potential future action, it will always be incumbent upon the original landowner to bring an action to quiet title in his or her name.

10. **Title: Deeds: Tax Sale: Words and Phrases.** The word "paid" in Neb. Rev. Stat. § 77-1844 (Reissue 2009) includes tendering payment.

11. **Title: Deeds: Tax Sale: Jurisdiction: Notice.** Neb. Rev. Stat. § 77-1843 (Reissue 2009) has a jurisdictional component that renders a tax deed void when the tax deed holder failed to comply with the statutory notice requirements prior to acquiring the deed.

12. **Title: Deeds: Tax Sale: Notice.** A misstatement in the statutory notice of the expiration of the time of redemption renders the tax deed invalid.

13. **Quiet Title.** The party seeking to quiet title must recover, if at all, on the strength of his own title and not on the weakness of his adversary's title.

14. **Equity.** The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand.

15. **Equity: Quiet Title.** In quiet title actions, one who seeks equity must do equity.

16. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

Appeal from the District Court for Franklin County: Terri S. Harder, Judge. Affirmed.

Deana K. Walocha for appellant.

Nicholas R. Norton, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee Dennis G. Johnson.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

Adair Holdings, LLC, brought a quiet title action after obtaining a tax deed. Adair Holdings' predecessor in interest attempted to provide Dennis G. Johnson, the owner of record,

with notice of the application for a tax deed via certified mail and then by publication. However, the notice contained incorrect information about the timeframe in which Johnson could redeem the property. On a motion for summary judgment, the trial court determined that the deed was void for incorrect notice and granted Johnson's counterclaim for quiet title. The court did not order Johnson to reimburse Adair Holdings for the delinquent taxes paid by Adair Holdings' predecessor in interest. Adair Holdings appeals.

## BACKGROUND

Adair Asset Management, L.L.C. (Adair Management), and BMO Harris Bank purchased a tax sale certificate from Franklin County. This tax sale occurred in March 2014 for taxes that were unpaid from 2012. Adair Management then paid the delinquent taxes for 2013, 2014, and 2015 as well.

After purchasing the tax certificate, Adair Management waited the 3-year statutory period set forth by Neb. Rev. Stat. § 77-1837 (Reissue 2009) and then sent notice in March 2017 by certified mail to Johnson's address of record. This notice indicated that Adair Management would be applying for a tax deed within 90 days if the property was not redeemed. The certified mail was marked as "Return to Sender, Unclaimed, Unable to Forward." After the attempt to provide notice by mail failed, notice was published in the Franklin County Chronicle newspaper on April 5, 12, and 19, 2017.

The content of the notice included the statutory requirements of Neb. Rev. Stat. § 77-1831 (Reissue 2009). The notice also contained a phrase from a more recent version of § 77-1831, which phrase read:

> If the property is owner occupied, the right of redemption shall expire at the close of business on the 45th day after the application for tax deed has been made. An additional redemption fee equal to twenty percent of all other amounts due must be paid if redemption is made after application for treasurer's deed has been made.

This passage was a part of § 77-1831 (Cum. Supp. 2012); how-ever, the statutory scheme contains a savings clause specify-ing that the 2009 law governs all tax sale certificates sold and issued between January 1, 2010, and December 31, 2014.[1] It does not appear from the record that Adair Management sent a copy of the published notice to Johnson's address of record.

Adair Management and BMO Harris Bank applied for the tax deed on July 19, 2017. The application included an affidavit by counsel stating that Adair Management had complied with the statutory requirements and provided notice via unclaimed certified mail and by publication. The treasurer issued a tax deed on July 25, 2017, and recorded it on July 31. In August, Adair Management and BMO Harris Bank provided a quit-claim deed to Adair Holdings for land described as follows: "The Southeast Quarter (SE ¼) of Section Five (5), Township Four (4) North, Range Fourteen (14), West of the 6th P.M. in Franklin County, Nebraska."

In October 2017, Adair Holdings commenced an action in equity to quiet title to the real estate in its name. Johnson filed an answer and a counterclaim requesting the court to quiet title in his name. Johnson argued that (1) the notice was statuto-rily defective for including a misstatement of law and (2) the notice was constitutionally defective according to Neb. Const. art. VIII, § 3, which requires that "occupants shall in all cases be served with personal notice before the time of redemption expires." In April 2018, Johnson served Adair Holdings with a set of requests for admissions and received no response.

Johnson moved for summary judgment, and a hearing was held in September 2018. In an affidavit entered at the summary judgment hearing, Johnson averred that he first discovered the existence of the tax deed in early August 2017. Johnson claims that he then reviewed the published notice and relied on the notice in believing he had 45 days to redeem the property. The 45th day from the issuance of the tax deed was Saturday,

---

[1] See Neb. Rev. Stat. § 77-1837.01 (Cum. Supp. 2016).

September 2, 2017. Johnson attempted to tender payment to the Franklin County treasurer on the first business day following September 2, and the treasurer refused payment because the tax deed had been issued.

Johnson argued that the notice contained a misstatement of law, as admitted by Adair Holdings' failure to respond to his requests for admissions, and that thus, the tax deed was void. Johnson also argued that Adair Management failed to inspect the land and should have served him personal notice pursuant to the Nebraska Constitution.

The court granted the motion for summary judgment in favor of Johnson, citing Adair Management's failure to comply with the notice requirements. The order (1) ruled that the tax deed was void, (2) ruled that the tax sale certificate was invalid and of no force and effect, and (3) quieted title to the property in Johnson. Adair Holdings appeals.

## ASSIGNMENTS OF ERROR

Adair Holdings argues that the district court erred in granting summary judgment to Johnson. Specifically, Adair Holdings argues that (1) the tax sale certificate is still valid because the voiding of a tax deed does not extinguish the lien for delinquent taxes and (2) the tax deed is not void because all the statutory requirements for notice were met and Johnson did not detrimentally rely on the misstatement of the law contained within the notice.

## STANDARD OF REVIEW

[1,2] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.[2] The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court.[3]

---

[2] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

[3] *Id.*

[3] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[4]

[4] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[5]

[5,6] A quiet title action sounds in equity.[6] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[7]

[7] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[8]

## ANALYSIS

[8,9] Disputes involving land that has been subjected to a government tax sale presents a unique situation where there are often two interrelated but distinct causes of action. Actions challenging title obtained via a tax deed are governed by

---

[4] *Williamson v. Bellevue Med. Ctr., ante* p. 312, 934 N.W.2d 186 (2019).

[5] *Id.*

[6] *Wisner v. Vandelay Investments, supra* note 2.

[7] *Id.*

[8] *Id.*

statute. However, a successful challenge to a tax deed does not resolve the underlying land dispute. Because a void tax deed grants color of title in a potential future action, it will always be incumbent upon the original landowner to bring an action to quiet title in his or her name.[9] This case presents Adair Holdings and Johnson's quiet title actions, as well as Johnson's action challenging Adair Management's tax deed under the provisions of Neb. Rev. Stat. §§ 77-1801 to 77-1863 (Reissue 2009). We first address the court's order granting summary judgment in favor of Johnson on his statutory cause of action challenging the tax deed.

## Validity of Adair Management's Tax Deed

Sections 77-1801 to 77-1863 govern tax deeds and provide the basic process by which a county may, through a tax sale, sell land to third parties as a means of recovering the landowner's delinquent taxes.[10] This court has long held that the statutory system for tax deeds found in chapter 77, article 18, of the Nebraska Revised Statutes must be strictly complied with and is to be strictly construed in favor of the landowner.[11]

Under the statutory scheme, a third party who pays a landowner's delinquent taxes receives in exchange a tax sale certificate and a tax lien against the property.[12] Title to the land does not immediately transfer to the tax sale certificate holder. These statutes require that a certificate holder must wait 3 years in order to either apply for a tax deed or foreclose upon the property.[13]

---

[9] See, *White v. Musser*, 87 Neb. 628, 127 N.W. 1058 (1910); Annot., 38 A.L.R.2d 986 (1954).

[10] See §§ 77-1801 to 77-1822.

[11] See, *King v. Boettcher*, 96 Neb. 319, 147 N.W. 836 (1914); *Howell v. Jordan*, 94 Neb. 264, 143 N.W. 217 (1913).

[12] See §§ 77-1801 to 77-1863.

[13] § 77-1837 and Neb. Rev. Stat. § 77-1902 (Reissue 2009).

During this 3-year period, the landowner maintains the right to redeem the land by paying the delinquent taxes along with a statutorily set interest rate and costs.[14] If, at the end of the 3 years, the property has not been redeemed, the certificate holder has only 6 months to request a tax deed or foreclose before both the certificate and tax lien expire.[15]

In order to apply for a tax deed during this 6-month window, the certificate holder must provide proper notice to all parties of record.[16] The certificate holder must submit an affidavit to the county treasurer to demonstrate that all of the statutory requirements have been satisfied before a tax deed can be issued.[17] Once a tax deed is issued, §§ 77-1843 and 77-1844 specify how a landowner can acquire standing to challenge a tax deed under the statutes and what proof is required.

[10] Johnson's counterclaim seeking to set aside Adair Management's tax deed raises a threshold issue of whether Johnson had standing under § 77-1844, which states that "[n]o person shall be permitted to question the title acquired by a treasurer's deed without first showing . . . that all taxes due upon the property have been paid by such person . . . ." Section 77-1844 provides in full:

> No person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale, and that all taxes due upon the property had been paid by such person or the persons under whom he claims title as aforesaid.

In applying this statute and its predecessors, we have held that the tender of payment to the county treasurer is sufficient to

---

[14] §§ 77-1824 to 77-1830.

[15] § 77-1856.

[16] § 77-1831.

[17] §§ 77-1832 and 77-1833.

grant the party standing.[18] We have understood the treasurer to be the intended payee of the payment described by § 77-1843 and have recognized that the statutory scheme does not actually allow the treasurer to accept a redemption payment after the tax deed is issued.[19] We have explained that it would place an unacceptable barrier to litigation to condition standing on something outside a plaintiff's control.[20] Therefore, the word "paid" in § 77-1844 includes tendering payment. Construing § 77-1844 otherwise would present an absurd result of rendering the remedy of § 77-1843 meaningless and would be contrary to the principle that the statutory framework should be interpreted in favor of the landowner.[21]

It is undisputed that Johnson attempted to tender payment to the county treasurer. He did so outside the statutory redemption period, but within the redemption period that Adair Management set forth in the public notice. It is also undisputed that because the tax deed had already been issued, the treasurer refused to accept the payment. Accordingly, the district court did not err in determining as a matter of law that Johnson's attempt to tender payment complied with § 77-1844 and gives him standing to assert his counterclaim.

[11] Once a party has established standing, § 77-1843 specifies four methods for a landowner to challenge the tax deed. In addition to these enumerated ways of invalidating a tax deed, we have also held that § 77-1843 has a jurisdictional component that renders a tax deed void when the tax deed holder failed to comply with the statutory notice requirements prior to acquiring the deed.[22] Section 77-1843 states:

---

[18] See, *Ottaco Acceptance, Inc. v. Larkin*, 273 Neb. 765, 733 N.W.2d 539 (2007); *Howell v. Jordan, supra* note 11.

[19] § 77-1824; *Ottaco Acceptance, Inc. v. Larkin, supra* note 18.

[20] See, *Ottaco Acceptance, Inc. v. Larkin, supra* note 18; *Howell v. Jordan, supra* note 11.

[21] See *King v. Boettcher, supra* note 11.

[22] *Thomsen v. Dickey*, 42 Neb. 314, 60 N.W. 558 (1894).

In all controversies and suits involving the title to real property claimed and held under and by virtue of a deed made substantially by the treasurer *in the manner provided by* sections 77-1831 to 77-1842, the person claiming the title adverse to the title conveyed by such deed shall be required to prove, in order to defeat the title . . . .

(Emphasis supplied.)

When interpreting § 77-1843 and its predecessors, we explained that the language of "in the manner provided by" requires strict compliance with the listed statutes in order for the treasurer to have acquired statutory authority to issue the tax deed.[23]

We agree with the district court that there is no dispute that Adair Management failed to strictly comply with the notice provision of § 77-1831 (Reissue 2009), which specifies the timing and content of the notice that must be served before a tax deed will be granted. Adair Management's notice provided the terms of notice set forth by § 77-1831 (Cum. Supp. 2012), which allowed for an owner who occupies the land to redeem within 45 days of the tax deed being issued. However, this was not the version applicable to Adair Management's tax certificate from the tax sale of Johnson's land. Section 77-1837.01 specified that based on the date of sale for the tax certificate for Johnson's land, the 2009 version of the statutes should be applied. Sections 77-1824 and 77-1831 (Reissue 2009) specified that Johnson's right to redeem expired upon the issuance of the tax deed.

[12] We have held that a misstatement in the statutory notice of the expiration of the time of redemption renders the tax deed invalid.[24] It is uncontested that the notice Adair Management mailed to Johnson and published in the newspaper contained

---

[23] See, *Brokaw v. Cottrell*, 114 Neb. 858, 211 N.W. 184 (1926); *Thomsen v. Dickey, supra* note 22.

[24] See, *Kuska v. Kubat*, 147 Neb. 139, 22 N.W.2d 484 (1946); *Stewart v. Ridenour*, 97 Neb. 451, 150 N.W. 206 (1914).

a misstatement of the time available for Johnson to redeem the land. Therefore, the district court correctly determined as a matter of law that the tax deed issued to Adair Management is void.

We disagree with Adair Holdings' contention that Johnson was required to show detrimental reliance as a condition for invalidating a tax deed for inaccurate notice. Adair Holdings provides no case law, and this court is not aware of any precedent in Nebraska or in other states, that would support the creation of such a requirement. Placing a burden on the landowner to show detrimental reliance on the inaccurate notice is not supported by any part of the statutory scheme.

## Johnson's Counterclaim
### for Quiet Title

[13] We turn next to the question of whether the district court erred in granting summary judgment in favor of Johnson on his quiet title claim. Quiet title actions generally require (1) allegations of facts showing his or her ownership, title, or interest in the property in dispute; (2) his or her actual or constructive possession (if possession is a condition of the right to maintain the action) or entitlement to possession of the property in dispute; and (3) the existence and invalidity of the defendant's interest, claim, or lien adverse to the plaintiff.[25] Moreover, the party seeking to quiet title must recover, if at all, on the strength of his own title and not on the weakness of his adversary's title.[26]

Johnson presented uncontested evidence that he was the landowner of record and held a deed registered with the county prior to the tax sale. By invalidating Adair Holding's deed, Johnson demonstrated that no one else had a superior claim to title. Such facts are sufficient to determine as a matter of law Johnson's legal claim to title.

---

[25] See 65 Am. Jur. 2d *Quieting Title* § 67 (2011).

[26] See *Williams v. Daughetee*, 72 Neb. 270, 100 N.W. 316 (1904).

[14,15] But, a quiet title action sounds in equity.[27] The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand.[28] In quiet title actions, we have generally applied the maxim that "'[one] who seeks equity must do equity.'"[29] Specifically, we have required a landowner to do the equity of paying to the clerk of the court the delinquent taxes with costs and interest before obtaining the equitable relief of quiet title.[30] Adair Holdings thus argues on appeal that the district court erred in quieting title in Johnson's name without ordering Johnson to pay to Adair Holdings the delinquent taxes, with costs and interest.

Adair Holdings did not assign as error that the district court erred by not ordering such a payment. It merely proposes in its argument that if we affirm the district court's determination that the tax deed was void, we should remand the matter to the district court to determine the amount of the delinquent taxes. Although not entirely clear, Adair Holdings presumably wishes us to do this so that such amount will be ordered as part of a judgment payable by Johnson to Adair Holdings.

[16] To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[31] Even if we view this argument as encompassed by Adair Holdings' assignment of error that the trial court erred when it held that the tax sale certificate was invalid and of no force and effect, Adair Holdings' argument lacks merit under the facts of this case. The equitable maxim that one who seeks equity must do equity is not the only applicable legal principle to a case such as this. In fact,

---

[27] *Wisner v. Vandelay Investments, supra* note 2.

[28] *Countryside Developers v. Peterson*, 9 Neb. App. 798, 620 N.W.2d 124 (2000).

[29] *Wygant v. Dahl*, 26 Neb. 562, 576, 42 N.W. 735, 739 (1889) (Maxwell, J., concurring). See *Dillon v. Merriam*, 22 Neb. 151, 34 N.W. 344 (1887).

[30] See, *Howell v. Jordan, supra* note 11; *Wygant v. Dahl, supra* note 29.

[31] Diamond v. State, 302 Neb. 892, 926 N.W.2d 71 (2019).

the case law that Adair Holdings relies on is inapposite to the case at bar because, in those cases, the former certificate holder asked for recovery for payments made and presented evidence to the trial court that the former certificate holder had paid the delinquent taxes to the county.

In *Wygant v. Dahl*, for instance, we held that a tax deed holder who failed to bring a quiet title action within the statutory period was nevertheless entitled under equity to be reimbursed by the landowner in possession who had brought a quiet title action against the tax deed holder. But we emphasized that the tax deed holder had raised the right to reimbursement below. We cited with approval a case in which the Iowa Supreme Court held that notwithstanding the maxim that one who seeks equity must do equity, if a tax deed holder does not in the proceedings below make a request for equitable relief in the form of a recovery of a tax sale payment, such relief may not be raised for the first time on appeal.[32]

Adair Holdings did not raise below the issue of recovery for payment of the delinquent taxes. We require arguments and theories of litigation to be raised below in order to provide sufficient notice to opposing parties.[33] Unless the landowner has notice that the certificate holder is claiming a right to repayment, the landowner is unlikely to plead and present evidence of any possible equitable defenses which may prevent the tax deed holder from recovering. Adair Holdings had an opportunity to request alternate forms of relief in its pleadings and in its answer to Johnson's counterclaim for quiet title. Adair Holdings did not state any claim for relief in the form of reimbursement by Johnson of the delinquent taxes paid by Adair Management. Neither did Adair Holdings raise the right to any such relief at any other point in the proceedings below.

---

[32] See *Wygant v. Dahl, supra* note 29, citing *Tabler v. Callanan*, 49 Iowa 362 (1878).

[33] See *State v. Kruse*, 303 Neb. 799, 931 N.W.2d 148 (2019).

This matter is further complicated by the fact that Adair Holdings is not the entity that actually paid the delinquent taxes to the county. The record demonstrates that a quitclaim deed from Adair Management and BMO Harris Bank transferred whatever interest they had in the land to Adair Holdings. But the record below provides no indication that any claims or rights to relief held by Adair Management or BMO Harris Bank were assigned to Adair Holdings. On the record presented, to require Johnson to pay Adair Holdings would provide Adair Holdings with compensation for a payment made by a third party without a sufficient showing that Adair Holdings has obtained standing to assert such a claim.

We hold, on the facts of this case, that summary judgment in favor of Johnson's counterclaim for quiet title was proper and that equity does not require relief to be granted to Adair Holdings. Adair Holdings did not request any forms of equitable relief below and did not assign any errors related to equitable relief on appeal. We do not make any determination of what rights or relief, if any, Adair Holdings, Adair Management, and/or BMO Harris Bank may be entitled to in a separate action.

## CONCLUSION

For the reasons set forth above, we affirm the decision of the district court.

Affirmed.